IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| MARISCO, LTD., a Hawaii Corporation, | ) ) ) | CIVIL NO. 18-00211 SOM/RT |
| Plaintiff, | ) ) ) | ORDER DENYING MOTION TO COMPEL ARBITRATION AND/OR |
| vs. | ) ) | MEDIATION AND JOINDER THEREIN |
| GL Engineering & Construction PTE., LTD, a Singapore Corporation; | ) ) ) ) | |
| LIM SING TIAN; and | ) ) | |
| RAYMOND GAN, | ) ) | |
| Defendants. | ) ) | |

**ORDER DENYING MOTION TO COMPEL ARBITRATION
AND/OR MEDIATION AND JOINDER THEREIN**

**I.    INTRODUCTION.**

Plaintiff Marisco, Ltd., hired Defendant GL Engineering & Construction, Pte., Ltd. ("GLEC"), to construct and deliver a dry dock. Marisco says that GLEC did not timely complete and deliver the dry dock and instead left Marisco with an unfinished dry dock that did not meet specifications. Marisco further asserts that GLEC's principals, Defendants Lim Sing Tian and Raymond Gan, misrepresented their experience and ability.

GLEC moves to compel Marisco to arbitrate its claims. Alternatively, GLEC says that Marisco should have attempted to mediate this matter before filing suit and that this court should dismiss the First Amended Verified Complaint or stay the case pending mediation. *See* ECF No. 9. Tian and Gan substantively

join in the motion.  *See* ECF No. 11.  This court is unpersuaded by the motion and joinder and denies them.

**II.        FACTUAL BACKGROUND.**

Marisco wanted a floating dry dock in Hawaii.  *See* First Amended Verified Complaint ¶ 18, ECF No. 6, PageID # 226.  On December 17, 2015, GLEC submitted a bid for the construction of the dry dock.  *Id.* ¶ 24, PageID # 228.

On December 30, 2015, Marisco sent GLEC $50,000 Singapore dollars to rent a location in Indonesia to build the dry dock, with the understanding that the funds would be applied toward the outstanding balance owed on the down payment of the contract price.  *Id.* ¶ 30, PageID # 229.

On January 4, 2016, Tian and Gan met with Marisco representatives in Hawaii.  Marisco says that Tian and Gan falsely represented 1) that GLEC had the experience, skill, and manpower to construct the dry dock per its specifications; and 2) that the Indonesia location was suitable for the construction and launching of the dry dock.  *Id.* ¶¶ 31-37, PageID # 229-31.

A few days later, on January 7, 2016, Marisco told GLEC that the dry dock absolutely had to be completed and delivered by a "drop-dead date" of September 30, 2016.  *Id.* ¶ 41, PageID # 232.

On January 9, 2016, GLEC increased its bid to build the dry dock by $690,000.  In seeking this additional amount, Tian

and Gan promised that they would personally ensure completion and delivery of the dry dock by September 30, 2016. *Id.* ¶ 44, PageID # 233. Marisco says it relied on that promise when it agreed to have GLEC build the dry dock and when it agreed to the increased price. *Id.* ¶ 45.

During the January 2016 meetings, Marisco told GLEC that the dry dock had to be built at a place where the water was at least five meters deep, so the dry dock could eventually be launched without damaging it. *Id.* ¶ 48, PageID # 234. Tian and Gan represented that they understood the depth requirement and that they would each personally ensure that it would be met so that the dry dock could be launched properly. *Id.*

On January 20, 2016, Marisco and GLEC entered into the agreement to build the dry dock. *Id.* ¶ 49, PageID # 234-35; ECF No. 6-1 (copy of Dry Dock Construction Agreement). GLEC agreed to build and perform all the work required by the dry dock plans. Agreement ¶ 1.1, ECF No. 6-1, PageID # 272. In return, Marisco agreed to pay a total of $9 million, with $1.8 million due immediately, followed by eight progress payments of $900,000, each progress payment to be paid upon completion of an additional 12.5% of the construction of the dry dock. Agreement ¶ 2.3(a), ECF No. 6-1, PageID # 274.

GLEC warranted that, when the dry dock was tendered for delivery, it would be free from defects in workmanship, would

3

conform to the specifications, would be in a finished condition, and would be fit for its intended purpose. Agreement ¶ 4.1, ECF No. 6-1, PageID # 277. Section 4.4 of the agreement required GLEC to promptly correct nonconforming work after being notified of any defect and after GLEC had inspected the work to confirm the defect.

Section 16 of the agreement concerns "Dispute Resolution" and states:

> **16.1 Reference to a Surveyor.** The Parties must use the procedure set forth in **Section 2.[5**[1]**]** for arbitration by an agreed surveyor to resolve disputes over contract administration, materials, and workmanship. The disputes referable to the agreed surveyor under the procedure outlined in **Section 2.5** are: (a) status of work for progress payments under **Section 2.5;** (b) impact of Force Majeure on contract performance under **Section 3.5;** and (c) impact of any change orders on contract Sum and Delivery under **Section 6.**
>
> **16.2 Negotiation; Mediation; Litigation.** For any dispute that may arise out of this Agreement, the Parties are to meet and use their best efforts to resolve the dispute by agreement. The Parties are to meet to discuss the possibility of a mutually agreed upon procedure to resolve any specific dispute that has arisen. The procedure may be streamlined or simplified in any manner the parties determine. If no mutual agreement of the Parties is affected, then the dispute resolution will proceed as follows. Any dispute that may be referred to

---

[1] At the hearing, the parties agreed that the reference in section 16.1 to section 2.4 is a typographical error that should instead refer to section 2.5. The court has therefore changed the reference to section 2.5.

> a surveyor as provided in **Section 16.1** but cannot be resolved by such reference and good faith efforts of the Parties to resolve such dispute, and any other dispute, controversy, or claim arising out of or relating to this Agreement, including any question regarding breach, termination, or invalidity thereof, is to be resolved by litigation under **Section 18.6**[, which requires litigation in the state or federal courts in Hawaii].

Section 2.5 of the agreement states:

> **2.5 Notice of Progress Billing.** Owner (or Owner's Representative) and Owner's lending institution (or its designated representative) have a right to inspect at any time the Work to confirm that the required work has been competed according to the Plans. Any dispute on whether Work covered by any progress payment is due is to be resolved by binding arbitration by a qualified marine surveyor mutually selected by the Parties. The fees of that arbitrator/surveyor are to be borne equally by the Parties. The Parties intend that such arbitration be done by the arbitrator/surveyor by reviewing and assessing the Work, and that he make his determination summarily, without the necessity of taking testimony or issuing a written or oral opinion. Owner must make progress payments properly due within 10 days of the due date.

Marisco says GLEC transferred an unfinished, defective, and damaged dry dock to it in May 2017, well after the deadline of September 30, 2016. First Amended Verified Complaint ¶¶ 56-59, ECF No. 6, PageID #s 237-38.

Count I asserts that Tian and Gan fraudulently induced Marisco into entering into the dry dock construction agreement by 1) misrepresenting to Marisco in January 2016 that GLEC had the

5

past ability, current experience, manpower, and supervisory staff to build the dry dock; 2) misrepresenting that the depth of the water where the dry dock was being built was at least 5 meters deep; and 3) falsely promising that Tian and Gan would personally ensure completion and delivery of the dry dock by September 30, 2016. First Amended Verified Complaint ¶¶ 136-37, ECF No. 6, PageID # 257.

Count II asserts a promissory estoppel claim against Tian and Gan, alleging that they induced Marisco to enter into the contract and made promises that induced Marisco to increase the contract price by $690,000. First Amended Verified Complaint ¶¶ 150-53, ECF No. 6, PageID # 260.

Count III asserts that GLEC breached the dry dock agreement's warranty provisions, specifically alleging that sections 4.1 and 4.2 of the agreement were breached when GLEC failed to deliver the dry dock as warranted and failed to correct the warranty breaches. First Amended Verified Complaint ¶¶ 161-63, ECF No. 6, PageID # 262.

Count IV asserts that GLEC actively concealed the warranty breaches to induce Marisco into accepting delivery of the dock and to avoid having to meet GLEC's warranty obligations. First Amended Verified Complaint ¶¶ 168-71, ECF No. 6, PageID #s 263-64.

**III. ANALYSIS.**

GLEC argues in its motion that the present dispute must be arbitrated or mediated before this litigation goes forward. This court disagrees and therefore denies GLEC's motion. The court also denies the substantive joinder in the motion for the same reasons.

**A. The Federal Arbitration Act Does Not Require Arbitration of Marisco's Claims.**

The parties agree that the Federal Arbitration Act ("FAA") controls whether arbitration is required here. Under the FAA, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "The Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. §§ 201–208, an amendment to the Federal Arbitration Act, requires enforcement of arbitration clauses in international contracts unless the clause is null and void." *Aasma v. Am. S.S. Owners Mut. Prot. & Indem. Ass'n, Inc.*, 95 F.3d 400, 405 (6th Cir. 1996).

The purpose of the FAA is to advance the federal policy favoring arbitration. *See Lowden v. T-Mobile USA, Inc.*, 512 F.3d 1213, 1217 (9th Cir. 2008). Another "overarching purpose of the FAA is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined

proceedings." *See Blair v. Rent-A-Ctr., Inc.*, 928 F.3d 819, 825 (9th Cir. 2019) (quotation marks, citation, and alterations omitted). The FAA's provisions therefore reflect a "liberal federal policy favoring arbitration." *Id.* (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)).

The FAA requires courts to "enforce the terms of arbitration agreements like other contracts." *Lowden*, 512 F.3d at 1220; *see also Munro v. Univ. of S. Cal.*, 896 F.3d 1088, 1091 (9th Cir. 2018). A court interpreting an arbitration agreement must resolve ambiguities as to the scope of the arbitration clause in favor of arbitration. *See United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 584-85 (1960) ("In the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail . . . ."); *see also Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 62 (1995)*; Boardman v. Pac. Seafood Grp.*, 822 F.3d 1011, 1018 (9th Cir. 2016). This court applies "general state-law principles of contract interpretation, while giving due regard to the federal policy in favor of arbitration by resolving ambiguities as to the scope of arbitration in favor of arbitration." *Boardman*, 822 F.3d at 1018 (quoting *Wagner v. Stratton Oakmont, Inc.*, 83 F.3d 1046, 1049 (9th Cir. 1996)).

In determining whether to compel a party to arbitrate, a district court may not review the merits of the dispute. Rather, the court's role under the FAA is limited "to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Munro*, 896 F.3d at 1091 (quoting *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008)). When a court determines that an arbitration agreement does not encompass the parties' dispute, the court cannot compel the parties to arbitrate the dispute under the agreement. *See In re Holl*, 925 F.3d 1076, 1083 (9th Cir. 2019) ("a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."). On the other hand, when a court determines that a valid arbitration agreement encompasses the parties' dispute, the FAA requires the court to enforce the arbitration agreement according to its terms. *See Countrywide Home Loans, Inc., v. Mortgage Guar. Ins. Corp.*, 642 F.3d 849, 854 (9th Cir. 2011) (noting that the FAA "mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed").

All parties agree that the arbitration clause contained in the Dry Dock Construction Agreement is valid and enforceable and should be construed under the FAA. This motion therefore turns on whether the parties' agreement to arbitrate encompasses

9

any or all claims asserted in the First Amended Verified Complaint.

The relevant arbitration agreement language in the Dry Dock Construction Agreement states:

> **16.1 Reference to a Surveyor**. The Parties must use the procedure set forth in Section 2.[5] for arbitration by an agreed surveyor to resolve disputes over contract administration, materials, and workmanship. The disputes referable to the agreed surveyor under the procedure outlined in Section 2.5 are: (a) status of work for progress payments under Section 2.5; (b) impact of Force Majeure on contract performance under Section 3.5; and (c) impact of any change orders on contract Sum and Delivery under Section 6.

GLEC argues that, because Marisco's claims pertain to matters of "administration, materials, and workmanship" relating to the dry dock, those claims must be arbitrated. GLEC says, for example, that Marisco is asserting a warranty claim that concerns materials and workmanship.

But the language GLEC relies on is part of a larger sentence requiring the parties to "use the procedure set forth in Section 2.[5] for arbitration by an agreed surveyor to resolve disputes over contract administration, materials, and workmanship." Section 2.5 states:

> **2.5 Notice of Progress Billing**. . . . Any dispute on whether Work covered by any progress payment is due is to be resolved by binding arbitration by a qualified marine surveyor mutually selected by the Parties. The fees of that arbitrator/surveyor are to be borne equally by the Parties. The Parties

10

> intend that such arbitration be done by the
> arbitrator/surveyor by reviewing and
> assessing the Work, and that he make his
> determination summarily, without the
> necessity of taking testimony or issuing a
> written or oral opinion.  Owner must make
> progress payments properly due within 10 days
> of the due date.

Additionally, section 16.1 does not simply refer to requiring arbitration for "disputes over contract administration, materials, and workmanship."  Instead, it explains that "The disputes referable to the agreed surveyor under the procedure outlined in Section 2.5 are: (a) status of work for progress payments under Section 2.5 . . . ."  In other words, the description of disputes referable to the surveyor pursuant to section 2.5 modifies the earlier sentence requiring the parties to use "arbitration by an agreed surveyor to resolve disputes over contract administration, materials, and workmanship."  Both sections appear to govern arbitration of progress payment claims, allowing an arbitrator or surveyor to summarily decide such claims.

GLEC views the warranty claim as a progress payment dispute, noting that Marisco withheld the final progress payment on the ground that GLEC's work was allegedly not completed in accordance with specifications.  However the dispute before this court is not at heart a dispute about any progress payment.  GLEC conceded at the hearing that Marisco could have brought the same claims even if Marisco had made all payments.  Marisco is the

11

master of its claims, and Marisco is not suing to keep the final payment. Marisco's claims cannot be recharacterized by GLEC as involving progress payments for purposes of sections 16.1 and 2.5. GLEC is not even claiming that the final progress payment should have been made. If Marisco were seeking a declaratory judgment providing that it could retain the final payment, the arbitration clause might well have been triggered. But that is not the situation before this court.

Because GLEC does not demonstrate on the present record that any claim falls within the scope of the arbitration agreement, the court denies the motion to the extent it seeks to require arbitration of Marisco's claims.

### B. Marisco Was Not Required to Further Attempt to Resolve Issues Before Initiating This Action.

GLEC argues that, under section 16.2 of the Dry Dock Construction Agreement, Marisco should have mediated this case before filing it. GLEC asks this court to stay or dismiss this case to allow the parties to mediate their dispute. GLEC's argument is unpersuasive.

Section 16.2 of the parties' agreement states:

> **16.2 Negotiation; Mediation; Litigation.**
> For any dispute that may arise out of this Agreement, the Parties are to meet and use their best efforts to resolve the dispute by agreement. The Parties are to meet to discuss the possibility of a mutually agreed upon procedure to resolve any specific dispute that has arisen. The procedure may be streamlined or simplified in any manner

12

>               the parties determine.  If no mutual
>               agreement of the Parties is affected, then
>               the dispute resolution will proceed as
>               follows.  Any dispute that may be referred to
>               a surveyor as provided in **Section 16.1** but
>               cannot be resolved by such reference and good
>               faith efforts of the Parties to resolve such
>               dispute, and any other dispute, controversy,
>               or claim arising out of or relating to this
>               Agreement, including any question regarding
>               breach, termination, or invalidity thereof,
>               is to be resolved by litigation under **Section
>               18.6**[, which requires litigation in the state
>               or federal courts in Hawaii].

Under section 16.2, the parties must use "best efforts" to resolve a dispute.  When those "best efforts" fail, unless the claim is one that must be arbitrated, the parties may turn to litigation.  While section 16.2 mentions "mediation" in its heading, there is no mandatory mediation requirement set forth in it.  The parties are just directed to meet in an effort to agree upon a procedure to resolve the dispute.

GLEC argues that Marisco failed to use its "best efforts" to resolve the dispute.  However, Marisco has done enough to survive the present motion.

On June 9, 2017, well before filing the original Verified Complaint on June 4, 2018, Marisco sent GLEC, Tian, and Gan correspondence asking "that GLEC *immediately* send representatives to Honolulu, Hawaii to inspect the Dry Dock subject to GLEC's agreement with Marisco Ltd., and to decide with Marisco on how best and quickest to bring the Dry Dock into compliance with GLEC's Warranties under Section 4.1."  ECF No. 1-

2, PageID # 99.  That correspondence notes that the dry dock was delivered to Marisco in Hawaii on June 3, 2017, and lists numerous construction defects.  *Id.*, PageID #s 99-107.

It appears that representatives of Marisco and GLEC met on July 10 and 11, 2017, verifying various construction defects.  *See* ECF No. 1-3. PageID #s 108-16.

On August 11, 2017, Marisco again sent correspondence to GLEC, Tian, and Gan, noting that they had not communicated with Marisco with respect to the alleged construction defects.  *See* ECF No. 1-4.  The letter states: "If GLEC does not respond immediately to Marisco, assuring Marisco that GLEC will pay for all labor and all materials to bring the Dry Dock into compliance with GLEC's Warranties . . . , then Marisco will litigate this issue."  *Id.*, PageID # 122.  The following day, GLEC acknowledged receipt of Marisco's claims.  *See* ECF No. 1-8, PageID # 143.

On August 27, 2017, GLEC responded.  *See* ECF No. 1-5.  GLEC argued that, because the final inspection had not occurred, its 30-day period to cure deficiencies had not started.  *Id.*, PageID # 128.  GLEC stated that it fully intended to comply with its contractual obligations.  *Id.*  On August 30, 2017, GLEC again noted that it had the right to inspect and comment with respect to alleged defects at a final inspection of the dry dock.  *See* ECF No. 1-6, PageID # 131.

On January 22, 2018, GLEC told Marisco:

14

> We are committed to cooperating amicably with
> you through mediation to resolve any
> outstanding issues with the Dry Dock and
> avoid litigation. However, we will also
> require similar assurances from you in this
> regard. In this respect, we have
> comprehensively addressed all the alleged
> defects of the Dry Dock in the Schedule
> enclosed. We trust that we have made our
> position clear in respect of the alleged
> defects that we have denied. With regard to
> the alleged defects that we have not denied,
> we are willing to work with Marisco to reach
> a resolution of the same. However, we will
> require a comprehensive breakdown from you in
> terms of the sums expended to rectify the
> alleged defects in order to move the matter
> forward.

ECF No. 1-9, PageID # 147.

It appears that Marisco planned to inspect the claimed inadequacies in the Dry Dock from May 9 to 11, 2018, but travel arrangements caused a postponement to May 30 to June 1, 2018. *See* ECF No. 1-10, PageID # 202. GLEC then pushed the inspection dates to June 4 to 6, 2018, because one of its engineers was hospitalized. *See* ECF No. 1-12, PageID # 204.

The present action was filed on June 4, 2018. *See* ECF No. 1. Marisco filed its First Amended Verified Complaint on June 6, 2018.

Given the present record, the court cannot say that Marisco failed to use its "best efforts" to resolve issues before filing the present complaint. From August 2017, Marisco had been telling GLEC that it was going to litigate this matter. While GLEC responded that it had the right to inspect alleged defects,

15

the record does not establish that GLEC could not inspect the dry dock during the many months until suit was filed. Under these circumstances, the court cannot conclude on this motion that Marisco failed to use its "best efforts" to resolve issues before filing this action. *See Jewel Companies, Inc. v. Pay Less Drug Stores NW., Inc.*, 741 F.2d 1555, 1564 n.11 (9th Cir. 1984) (noting that, at a minimum, "best efforts" requires a party "to act in good faith toward the party to whom it owes a 'best efforts' obligation"); 2 E. Allen Farnsworth, Zachary Wolfe, *Farnsworth on Contracts* § 7.23 (4th ed. 2019) ("Best efforts is a standard that has diligence as its essence and is imposed on those contracting parties that have undertaken such performance."). Whether Marisco utilized its "best efforts" is a question for the jury. *United Telecommunications, Inc. v. Am. Television & Commc'ns Corp.*, 536 F.2d 1310, 1319 (10th Cir. 1976) ("Both parties had introduced evidence bearing on the negotiations and the meaning intended for the term 'best efforts.' When the interpretation is in dispute as it was here, it is a question for the jury.").

This court also notes that, since it heard argument on this motion, the parties agreed to attempt to settle this matter before this court ruled on the present motion and joinder. *See* ECF Nos. 18 and 19. The parties subsequently stipulated to a stay of this action to pursue settlement rather than litigation.

16

*See* ECF No. 40.  At this point, it can hardly be said that Marisco has failed to pursue an informal resolution of the matters raised in this case.

**IV.	CONCLUSION.**

The court denies GLEC's motion and the substantive joinder.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, October 3, 2019.



    /s/ Susan Oki Mollway
Susan Oki Mollway
United States District Judge

Marisco, Ltd. v. GL Engineering & Constr. PTE, Ltd., Civ No. 18-00211 SOM/RT, ORDER DENYING MOTION TO COMPEL ARBITRATION AND/OR MEDIATION AND JOINDER THEREIN