IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| MARISCO, LTD., a Hawaii Corporation, | CIVIL NO. 18-00211 SOM/RT |
| Plaintiff, | ORDER DENYING MOTION TO DISMISS COUNT V OF THE SECOND AMENDED VERIFIED COMPLAINT |
| vs. | |
| GL Engineering & Construction PTE., LTD, a Singapore Corporation; | |
| LIM SING TIAN; and | |
| RAYMOND GAN, | |
| Defendants. | |

**ORDER DENYING MOTION TO DISMISS COUNT V
OF THE SECOND AMENDED VERIFIED COMPLAINT**

**I.     INTRODUCTION.**

This case concerns the construction and sale of a dry dock by Defendant GL Engineering & Construction, Pte., Ltd., and its representatives Defendants Lim Sing Tian and Raymond Gan (collectively, "GLEC"), to Plaintiff Marisco, Ltd.  To the extent Count V of the Second Amended Verified Complaint includes a claim based on an alleged violation of Hawaii's version of the Uniform Commercial Code ("UCC"), GLEC moves to dismiss that claim, arguing that Hawaii's UCC is inapplicable because the agreement at issue does not involve a sale of a good and is instead a construction contract.[1]  The court denies the motion without a

---

[1]The motion does not seek dismissal of the other warranty claims asserted in Count V.

hearing pursuant to Local Rule 7.1(c), ruling that the Second Amended Verified Complaint plausibly alleges that the agreement involves the sale of a future good subject to Hawaii's UCC.

**II.     FACTUAL BACKGROUND.**

On January 20, 2016, Marisco and GLEC entered into the "Dry Dock Construction Agreement." *See* Second Amended Verified Complaint ¶ 49, PageID # 812; ECF No. 53-1 (copy of Dry Dock Construction Agreement). The agreement notes, "Owner wishes to expand its business by purchasing a dry dock." Agreement, ECF No. 53-1, PageID # 852. It additionally states that it "sets forth the terms and conditions of Contractor's building a floating dry dock for Owner." *Id.* It continues, "Owner agrees to buy, and Contractor agrees to build and perform all the work required to construct, build, complete, and deliver to Owner . . . a floating dry dock (**'Dry Dock'**), constructed in strict accordance with the Plans that Owner will provide Contractor concerning the Dry Dock." *Id.* ¶ 1.1. The dry dock was to be delivered to Marisco by September 20, 2016. *Id.* ¶ 3.1, PageID # 859. The agreement required GLEC to provide a bill of sale to Marisco. *Id.* ¶ 3.2, PageID # 860.

Marisco agreed to pay a total of $9 million "for the performance of the Work," with $1.8 million due immediately, followed by eight progress payments of $900,000, each progress payment to be paid upon completion of an additional 12.5% of the

2

construction of the dry dock. Agreement ¶¶ 2.1, 2.3(a), PageID #s 857-58.

GLEC warranted that, when the dry dock was tendered for delivery, it would be free from defects in workmanship, would conform to the specifications, would be in a finished condition, and would be fit for its intended purpose. Agreement ¶ 4.1, ECF, PageID # 861. Paragraph 4.4 of the agreement required GLEC to promptly correct nonconforming work after being notified of any defect and after GLEC had inspected the work to confirm the defect. *Id.*

> According to the agreement,
>
> The Dry Dock at all times is and remains the property of Owner in all stages of construction, and all material purchased and delivered in the Batam Yard for the Dry Dock or appropriated to the construction of the Dry Dock becomes the property of Owner by such delivery and appropriation, subject to a lien by Contractor for any unpaid installment of the Contract Sum.

*Id.* ¶ 8, PageID # 866.

Marisco says GLEC transferred an unfinished, defective, and damaged dry dock to it in May 2017, well after the deadline of September 30, 2016. Second Amended Verified Complaint ¶¶ 61-64, ECF No. 53, PageID #s 816-17.

**III.    STANDARD.**

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court's review is generally limited to the

contents of a complaint. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *Campanelli v. Bockrath*, 100 F.3d 1476, 1479 (9th Cir. 1996). However, the court may take judicial notice of and consider matters of public record without converting a Rule 12(b)(6) motion to dismiss into a motion for summary judgment. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001); *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1198 (9th Cir. 1988). The court may also consider materials incorporated into the complaint. "But the mere mention of the existence of a document is insufficient to incorporate the contents of a document." *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010). Instead, courts may "consider documents in situations where the complaint necessarily relies upon a document or the contents of the document are alleged in a complaint, the document's authenticity is not in question and there are no disputed issues as to the document's relevance." *Id.* (examining whether the material was "integral" to the complaint). When matters outside the pleadings are considered, the Rule 12(b)(6) motion is treated as one for summary judgment. *See Keams v. Tempe Tech. Inst., Inc.*, 110 F.3d 44, 46 (9th Cir. 1997); *Anderson v. Angelone*, 86 F.3d 932, 934 (9th Cir. 1996).

On a Rule 12(b)(6) motion to dismiss, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. *Fed'n of African Am.*

4

*Contractors v. City of Oakland*, 96 F.3d 1204, 1207 (9th Cir. 1996). However, conclusory allegations of law, unwarranted deductions of fact, and unreasonable inferences are insufficient to defeat a motion to dismiss. *Sprewell*, 266 F.3d at 988; *Syntex Corp. Sec. Litig.*, 95 F.3d 922, 926 (9th Cir. 1996).

Dismissal under Rule 12(b)(6) may be based on either: (1) lack of a cognizable legal theory, or (2) insufficient facts under a cognizable legal theory. *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988) (citing *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533-34 (9th Cir. 1984)).

"[T]o survive a Rule 12(b)(6) motion to dismiss, factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true even if doubtful in fact." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted); *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a

5

formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

**IV.     ANALYSIS.**

Count V of the Second Amended Complaint asserts a breach of warranty claim and includes allegations of a violation of Hawaii's UCC. GLEC seeks dismissal of the portion of Count V asserting a claim under Hawaii's UCC, arguing that the Dry Dock Construction Agreement does not involve the sale of a "good." GLEC contends that "the Dry Dock Construction Agreement . . . is a contract for the purchase of raw materials (about which there is no dispute) and *construction services*." ECF No. 55-1, PageID # 1012. Having recast the agreement in the light most favorable to itself, GLEC argues that the UCC is inapplicable because the agreement does not pertain to a sale of goods. *Id.*, PageID # 1013. For purposes of this Rule 12(b)(6) motion, GLEC does not show that the alleged facts, read in the light most favorable to Marisco, fail to state a claim. Accordingly, the court denies the motion to dismiss Count V to the extent it is based on Hawaii's UCC.

6

Article 2 of chapter 490 of Hawaii Revised Statutes, part of Hawaii's UCC, "applies to transactions in goods." Haw. Rev. Stat. § 490: 2-102; *Strojny v. PermaDri, Inc.*, 2012 WL 4718099, at *12 (D. Haw. Sept. 30, 2012) ("Article 2 of the Hawai'i UCC 'applies to transactions in goods.'"). In relevant part, Hawaii's UCC defines "Goods" as "all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities (Article 8) and things in action." Haw. Rev. Stat. § 490: 2-105(1). "Goods must be both existing and identified before any interest in them can pass. Goods which are not both existing and identified are 'future' goods. A purported present sale of future goods or of any interest therein operates as a contract to sell." Haw. Rev. Stat. § 490: 2-105(2). Hawaii's UCC states:

> In this article unless the context otherwise requires "contract" and "agreement" are limited to those relating to the present or future sale of goods. "Contract for sale" includes both a present sale of goods and a contract to sell goods at a future time. A "sale" consists in the passing of title from the seller to the buyer for a price (section 490:2-401). A "present sale" means a sale which is accomplished by the making of the contract.

Haw. Rev. Stat. § 490:2-106(1). Hawaii's UCC, by its language, applies to the sale of future goods.

7

GLEC argues that Hawaii's UCC is inapplicable because there was no passage of title that can be construed as a sale. *See Kennedy v. Vacation Internationale, Ltd.*, 841 F. Supp. 986, 990 (D. Haw. 1994) (court stating in case involving a slip and fall injury on a lanai at a time-share, "This court cannot fathom how permanently affixed lanai tile could possibly be regarded as a 'good' within the meaning of the Hawaii U.C.C. Furthermore, there is no evidence of a relevant 'sale' of lanai tile to the time-share owner in this case."). GLEC contends that it entered into a construction agreement that "sets forth the terms and conditions of Contractor's building a floating dry dock for Owner." Agreement, ECF No. 53-1, PageID # 852. The agreement states that GLEC "agrees to build and perform all the work required to construct, build, complete, and deliver to Owner . . . a floating dry dock ('**Dry Dock**')." *Id.* ¶ 1.1. It further provides that "[t]he Dry Dock at all times is and remains the property of Owner in all stages of construction." *Id.* ¶ 8, PageID # 866. GLEC says that the main purpose of the contract is to construct the dry dock. ECF No. 55-1, PageID # 1021. *See United States ex rel. Bartec Indus., Inc. v. United Pac. Co.*, 976 F.2d 1274, 1277 (9th Cir. 1992), *opinion amended on denial of reh'g*, 15 F.3d 855 (9th Cir. 1994) (stating that courts look to the essence of an agreement to determine whether it involves a sale of a good or a service, and, when sales and service

8

components of a contract are mixed, a court addressing whether the UCC applies should examine "whether their predominant factor, their thrust, their purpose, reasonably stated, is the rendition of service, with goods incidentally involved . . . or is a transaction of sale, with labor incidentally involved" (quoting *United States v. City of Twin Falls, Idaho*, 806 F.2d 862, 871 (9th Cir. 1986))); *RRX Indus., Inc. v. Lab-Con, Inc.*, 772 F.2d 543, 546 (9th Cir. 1985) ("In determining whether a contract is one of sale or to provide services we look to the essence of the agreement.").

The essence of the Dry Dock Construction Agreement may or may not be the construction asserted by GLEC on this motion. The agreement provides, "Owner wishes to expand its business by **purchasing** a dry dock." ECF No. 53-1, PageID # 852 (emphasis added). It further states, "**Owner agrees to buy**, and Contractor agrees to build and perform all the work required to construct, build, complete, and deliver to Owner . . . **a floating dry dock ('Dry Dock')**, constructed in strict accordance with the Plans that Owner will provide Contractor concerning the Dry Dock." *Id.* ¶ 1.1 (emphasis added). GLEC was also required to provide a bill of sale to Marisco. Agreement ¶¶ 3.2, PageID # 860. The Dry Dock Construction Agreement may be a mixed contract for the sale and the construction of the dry dock. This court cannot tell from the language of the agreement itself whether the sale or the

9

construction of the dry dock predominates. Interpreting the agreement in the light most favorable to Marisco for purposes of this motion, the court sees as plausible a contract reading in which the essence of the agreement is the sale of the dry dock. The dry dock may be a good, as it is a "thing[] (including specially [a] manufactured good[]) which [is] movable at the time of identification to the contract for sale." Haw. Rev. Stat. § 490: 2-105(1).

The Central District of California has noted that, while the language of a contract sometimes reveals its essence, courts may need to examine what was actually exchanged with respect to the contract to determine whether goods or services predominate. *See Cal. Hydrostatics, Inc. v. Gunderson Rail Servs., LLC*, 2017 WL 8236355, at *4 (C.D. Cal. Oct. 19, 2017). When both goods and services are involved, that court noted that a court may compare the value of the goods to the value of the services to determine which predominates. *Id.* This court lacks facts allowing it to determine as a matter of law whether goods or services predominate under the circumstances presented here. Because it is plausible that goods predominate over services in the present case, the court must deny the motion to dismiss. *See FiTeq Inc. v. Venture Corp.*, 2015 WL 3987912, at *6-7 (N.D. Cal. June 30, 2015), at *6 (holding that the engineering and development of a "smart" credit card involved a contract for

services, but that the manufacture and production of those cards for sale involved a contract for goods); *Gonsalves v. Montgomery*, 2006 WL 2711540, at *1, 5 (N.D. Cal. Sept. 20, 2006) (applying California Commercial Code to a contract to "construct a twenty-five by nine foot boat . . . and to deliver the Boat to Plaintiff for the purchase price of $70,000"); *see also In re Carman*, 399 B.R. 158, 161 (Bankr. D. Md. 2009) (ruling that, at the time a contract was entered into for the construction of a 46-foot boat, the boat was a future good and the contract was a contract to sell).

**V.   CONCLUSION.**

The court denies GLEC's motion to dismiss the portion of Count V relating to the UCC.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, February 3, 2020.



/s/ Susan Oki Mollway
Susan Oki Mollway
United States District Judge

Marisco, Ltd. v. GL Engineering & Constr. PTE, Ltd., Civ No. 18-00211 SOM/RT, ORDER DENYING MOTION TO DISMISS COUNT V OF THE SECOND AMENDED VERIFIED COMPLAINT