IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| MARISCO, LTD., a Hawaii Corporation, | ) ) ) | CIVIL NO. 18-00211 SOM/RT |
| Plaintiff, | ) ) | ORDER DENYING GLEC'S MOTION FOR PARTIAL SUMMARY JUDGMENT |
| vs. | ) ) | WITH RESPECT TO SECTION 4.4 OF THE AGREEMENT |
| GL ENGINEERING & CONSTRUCTION PTE., LTD, a Singapore Corporation; | ) ) ) ) | |
| LIM SING TIAN; and | ) ) | |
| RAYMOND GAN, | ) ) | |
| Defendants. | ) ) | |

**ORDER DENYING GLEC'S MOTION FOR PARTIAL SUMMARY JUDGMENT
WITH RESPECT TO SECTION 4.4 OF THE AGREEMENT**

I.        INTRODUCTION.

        This case concerns the construction and sale of a dry dock by Defendant GL Engineering & Construction, Pte., Ltd., and its representatives Defendants Lim Sing Tian and Raymond Gan (collectively, "GLEC"), to Plaintiff Marisco, Ltd.  GLEC seeks partial summary judgment in the form of a ruling that section 4.4 of the Dry Dock Construction Agreement imposes a limitation on any damages that Marisco might seek for alleged breach of warranty or breach of contract.  There is no dispute as to the validity of section 4.4.  Nor do the parties dispute that section 4.4, if enforced, might limit Marisco's remedies with respect to breach of warranty and breach of contract claims against GLEC. What is in dispute is whether the limitation contained in section

4.4 has been triggered.  This court, finding that there are factual disputes that cannot be resolved on this motion, denies GLEC's motion.

## II.      FACTUAL BACKGROUND.

On January 20, 2016, Marisco and GLEC entered into the "Dry Dock Construction Agreement."  *See* ECF No. 95-3 (copy of Dry Dock Construction Agreement).  The Agreement designated Marisco as the "Owner" and GLEC as the "Contractor."  ECF No. 95-3, PageID # 2132.  GLEC agreed to construct the dry dock in Batam, Indonesia, and to deliver the dry dock to Marisco's towing agent in Indonesia by September 20, 2016, so it could then be towed to Hawaii.  *Id.* ¶¶ 1.5, 3.1, 4.3 PageID #s 2133, 2135, 2137.

GLEC warranted that, when the dry dock was delivered to the towing agent in Indonesia, it would be free from defects in workmanship, would conform to specifications, would be in a finished condition, and would be fit for its intended purpose. Agreement ¶ 4.1, ECF No. 95-3, PageID #S 2136-37.

Section 4.3 agreement, which bears the heading "**Warranty Period,**" provides:

> (a) the Dry Dock will be delivered to Owner's towing agent in Indonesia and the Dry Dock will be towed to Owner's facility in the State of Hawaii; and (b) once the Dry Dock arrives at the Owner's facility [in Hawaii] Owner will complete construction of the Dry Dock.  Within 100 days after Contractor receives notice from Owner that the construction of the Dry Dock is completed, Contractor must travel to the Owner's

> facility in Hawaii, for the final inspection of the Dry Dock. . . .  At the final inspection, the Parties will inspect and test the Dry Dock, including the assessment of the water tightness and integrity of the Dry Dock's wing walls and Dry Dock's compartments.  Contractor has no responsibility for any claim by Owner under **Sections 4.1** and **4.2** that Contractor does not receive in writing from Owner within 30 days of that final inspection.

ECF No. 95-3, PageID # 2137.

Section 4.4 of the Agreement required GLEC to promptly correct nonconforming work after being notified of any defect and after GLEC had inspected the work to confirm the defect:

> If Owner notifies Contractor in accordance with **Section 4.3** of any claim covered under **Sections 4.1** and **4.2** (which notice must set forth with specificity the Dry Dock affected and the nature and location of the defect), and upon inspection thereafter by Contractor at which time Contractor confirms that the warranted defect set out in the notice in fact exists, then Contractor promptly must correct the nonconforming work by making repairs or replacements, without expense to Owner; or, if it is not practical to have Contractor make the repairs or replacements, then Owner may have the repairs or replacements made by a third party, and, in that event, Contractor must reimburse Owner an amount equivalent to the lesser of (a) the amount Contractor would have expended at its own yard at Contractor's then-prevailing rates or (b) the amount actually expended by Owner; provided, however, that in no event is Contractor to be liable to Owner for any amount in excess of the cost of repairs or replacements as specified above.

*Id.*, PageID # 2137.

According to Ping An Lee, finance manager for GLEC, Marisco's representatives, including Alfred Anawati, inspected the dry dock on May 3, 2017, at the Batam Yard in Indonesia.  *See* Decl. of Ping An Lee ¶ 2, ECF No. 74-1, PageID # 1501.  Later that same day, the dry dock began a 26-day dry tow from Indonesia to Hawaii that cost approximately $2 million and that involved placing the dry dock on top of a larger vessel.  *Id.* ¶¶ 3-8, PageID #s 1501-02.  Under section 4.3, once the dry dock was in Hawaii, Marisco was to complete construction.  ECF No. 95-3, PageID # 2137.

There is no dispute that GLEC lacked the facilities, personnel, and necessary license to conduct dry dock repair work in the United States.  *Id.* ¶¶ 9-10, PageID #s 1502.

The dry dock arrived in Hawaii on June 3, 2017.  Several days later, on June 9, 2017, Marisco sent a letter to GLEC, indicating that Marisco had begun inspecting the dry dock and had found many defective items.  While the letter did not purport to identify all the defects, it detailed some of them and included photographs and other records that Marisco said showed certain defects.  The same letter asked GLEC to immediately send representatives to Hawaii "to inspect the Dry Dock subject to GLEC's agreement with Marisco Ltd., and to decide with Marisco on how best and quickest to bring the Dry Dock into compliance with

GLEC's Warranties under Section 4.1." *See* ECF No. 74-5, PageID #s 1606.

Marisco sent similar letters to GLEC on June 16 and June 23, 2017. *See* ECF No. 95-5, PageID # 2183.

On June 28, 2017, GLEC responded that it was sending its project manager, Thet Lwin, and engineer, Han Lin Kyaw (whose surname appears to be "Han"), to Hawaii to inspect the dry dock. Lwin and Han needed visas to travel to Hawaii, *see* ECF No. 95-6, PageID # 2186, which they did in July 2017. *See* Decl. of Fred Anawati ¶ 20, ECF No. 95-1, PageID # 2116.  Han attested to defects in the dry dock in front of a notary public. *Id.;* ECF No. 95-7.  Ping Han Lee of GLEC says that Han was threatened and coerced into attesting to defects. *See* Decl. of Ping Han Lee ¶ 21, ECF No. 103-1, PageID # 2869.

On August 11, 2017, Marisco wrote a letter to GLEC in which Marisco noted that GLEC had not communicated with Marisco since the July 2017 inspection.  Marisco told GLEC that Marisco needed to have the dry dock operational by August 27, 2017, given Marisco's contractual obligations with third parties.  Marisco stated that it had not yet completed its own work on the dry dock and would soon give GLEC a written notice of completion that would trigger GLEC's obligation under section 4.3 of the Agreement to travel to Hawaii for a final inspection.  ECF No. 103-6, PageID #s 2889-92.

In its letter of August 11, 2017, Marisco listed $1,977,747.90 in expenses incurred for repairs and because of delay.  ECF No. 103-6, PageID #s 2889-93.  On August 16, 2017, Marisco sent GLEC an email detailing some of the work it had done to address its warranty claims.  *See* ECF No. 103-7, PagID # 2895.  It is not clear that Marisco was entitled to fix any alleged defect before GLEC had inspected the dry dock with respect to such a defect and had had a chance to address it.  Of course, according to Marisco, GLEC had failed to respond to Marisco's requests to inspect and fix the defects identified by Marisco.

On August 27, 2017, GLEC wrote to Marisco, acknowledging Marisco's desire for a fully operational dry dock by that date.  GLEC maintained that it had complied with its obligation to deliver the dry dock and with its warranty obligations under section 4.3.  ECF No. 103-8, PageID #s 2897-2902.  Section 4.3 provided that, once Marisco provided GLEC with written notice of completion of the dry dock, GLEC had 100 days to travel to Hawaii to conduct a final inspection.  ECF No. 95-3, PageID # 2137.

On August 30, 2017, GLEC wrote to Marisco, reminding Marisco of the procedures set forth in the Dry Dock Agreement with respect to warranty work.  Specifically, GLEC referred to sections 4.3 and 4.4 and stated that Marisco was required to complete the dry dock and tender a notice of completion to GLEC

6

before GLEC had an obligation to do a final inspection.  GLEC told Marisco that it should refrain from self-help and first allow GLEC to do the final inspection and to rectify any deficiencies.  GLEC said that, pursuant to section 4.4 of the Agreement, if Marisco fixed alleged defects before giving GLEC the opportunity to do so, "GLEC will only be liable for an amount equivalent to the lesser of (a) the amount GLEC would have expended at its own yard at its then-prevailing rates or (b) the amount actually expended by Marisco in undertaking the rectification work."  ECF No. 74-6, PageID # 1615.

On September 6, 2017, Marisco sent GLEC a notice of completion of the dry dock.  *See* ECF No. 103-9, PageID # 2903.  One hundred days after September 6, 2017, was December 15, 2017.  Under the terms of the Agreement, GLEC was supposed to have conducted the final inspection by December 15, 2017.  It did not.

On or about December 6, 2017, Marisco sent GLEC a notice of warranty claims.  *See* Anawati Decl. ¶ 26, ECF No. 95-1, PageID # 2117; ECF No. 95-9.  About a month later, on January 8, 2018, Marisco noted that it had not gotten any response with respect to the warranty claims and demanded that GLEC provide adequate assurance that GLEC intended to perform the warranty work to avoid litigation.  *See* ECF No. 95-10, PageID #s 2209-11.

On January 22, 2018, GLEC responded with a schedule for fixing defects.  The letter asked Marisco to provide a breakdown

of the money it had spent fixing alleged defects and reserved GLEC's right to do a final inspection.  *See* ECF No. 95-11, PageID # 2212.

On March 15, 2018, GLEC notified Marisco that GLEC wanted to conduct the final inspection discussed in section 4.4 of the Agreement.  *See* ECF No. 95-12, PageID # 2270.

GLEC appears to have proposed inspection dates of May 9 to 11, 2018, but then, in a letter dated May 16, 2018, changed those dates to May 30 to June 1, 2018, claiming that GLEC had not timely heard back from Marisco.  *See* ECF No. 95-14, PageID # 2272.  The same day, May 16, 2018, Marisco agreed to the new proposed inspection dates.  *See* ECF No. 95-15, PageID # 2273.

On May 24, 2018, GLEC postponed the inspection dates, saying that one of its engineers was in the hospital.  GLEC proposed new inspection dates of June 4 to June 6, 2018.  *See* ECF No. 95-16, PageID # 2274.  This lawsuit was filed on June 4, 2018.

## III.    **SUMMARY JUDGMENT STANDARD.**

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment shall be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  *See Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).  The movants must support their position

concerning whether a material fact is genuinely disputed by either "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers, or other materials"; or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c). One of the principal purposes of summary judgment is to identify and dispose of factually unsupported claims and defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial. *See id.* at 323. A moving party without the ultimate burden of persuasion at trial has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

The burden initially falls on the moving party to identify for the court those "portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex Corp.*,

477 U.S. at 323).   "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (footnote omitted).

        The nonmoving party may not rely on the mere allegations in the pleadings and instead must set forth specific facts showing that there is a genuine issue for trial.   *T.W. Elec. Serv.*, 809 F.2d at 630.   At least some "'significant probative evidence tending to support the complaint'" must be produced.   *Id.* (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.,* 391 U.S. 253, 290 (1968)); *see also Addisu*, 198 F.3d at 1134 ("A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact.").   "[I]f the factual context makes the non-moving party's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial."   *Cal. Arch'l Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987) (citing *Matsushita Elec. Indus. Co.*, 475 U.S. at 587).   *Accord Addisu*, 198 F.3d at 1134 ("There must be enough doubt for a 'reasonable trier of fact' to find for plaintiffs in order to defeat the summary judgment motion.").

        In adjudicating summary judgment motions, the court

must view all evidence and inferences in the light most favorable to the nonmoving party.  *T.W. Elec. Serv.*, 809 F.2d at 631. Inferences may be drawn from underlying facts not in dispute, as well as from disputed facts that the judge is required to resolve in favor of the nonmoving party.  *Id.*  When "direct evidence" produced by the moving party conflicts with "direct evidence" produced by the party opposing summary judgment, "the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact."  *Id.*

**IV.      ANALYSIS.**

GLEC seeks summary judgment with respect to section 4.4 of the Dry Dock Construction Agreement, arguing that it limits any damages Marisco may recover for breach of warranty and breach of contract.  All parties agree that section 4.4 of the Agreement is valid, but they disagree as to whether it applies to the claims before this court.  Marisco argues that the limitation in section 4.4 has not been triggered.  Because GLEC has not demonstrated as a matter of law that the conditions for application of section 4.4 exist, the court denies the motion.

GLEC's letters to Marisco contend that GLEC was only responsible for fixing defects under its warranties if Marisco notified it of the defects in the 30-day window between the final inspection and the end of the warranty period.  According to GLEC, if Marisco itself addressed alleged defects *before* GLEC's

11

final inspection, then Marisco was limited to recovering the lesser of what the cost of the repairs would have been if GLEC had performed them in Indonesia or what Marisco actually paid. On the present record, this court cannot say that the Agreement must necessarily be read in that manner.

Under Hawaii law, "it is fundamental that terms of a contract should be interpreted according to their plain, ordinary and accepted use in common speech, unless the contract indicates a different meaning." *Brown v. KFC Nat'l Mgmt. Co.*, 82 Haw. 226, 240, 921 P.2d 146, 160 (1996) (quotation marks, alteration, and citation omitted).  The Hawaii Supreme Court has further noted that courts are "to ascertain and effectuate the intention of the parties as manifested by the contract in its entirety.  If there is any doubt, the interpretation which most reasonably reflects the intent of the parties must be chosen." *Id.* (quotation marks and citation omitted).  The court therefore turns to the plain language of the Agreement to determine GLEC's responsibilities with respect to its warranties.

There is no dispute that GLEC warranted that, upon delivery in Indonesia, the dry dock would be free from defects in workmanship, would conform to specifications, would be in a finished condition, and would be fit for its intended purpose. Agreement ¶ 4.1, ECF, PageID #S 2136-37.

12

Instead, this dispute concerns specific sections of the Agreement relating to alleged defects.

The court begins with section 4.3.  *See* ECF No. 95-3, PageID # 2137.  Section 4.3, set forth earlier in this order, states in part, "Contractor has no responsibility for any claim by owner under Sections 4.1 and 4.2 that Contractor does not receive in writing from Owner within 30 days of that final inspection."  Thus, section 4.3 sets a deadline for Marisco's submission of written warranty claims.  That deadline is 30 days after GLEC's final inspection.  However, section 4.3 does not address at all claims made before the final inspection.  GLEC appears to be reading section 4.3 as limiting claims to those brought between final inspection and 30 days after final inspection, such that claims before final inspection are barred by section 4.3.  If there is a bar on claims preceding final inspection, that bar is not included in the express language of section 4.3, which by its terms sets an outside deadline ("within 30 days of that final inspection") for submission of warranty claims.

The parties also point to section 4.4 of the Agreement. That section states that GLEC's liability with respect to warranty work is limited to the lesser of the costs GLEC would have incurred had it done the warranty work in Indonesia or the actual costs of the warranty work in Hawaii.  Once again, GLEC

13

argues for a particular reading of the language in the Agreement that is not necessarily the only appropriate reading.

Section 4.4 bears the heading **"Contractor's Obligation under Warranty and Claims Notice."**  The section begins:

> If Owner notifies Contractor in accordance with **Section 4.3** of any claim covered under **Sections 4.1** and **4.2** (which notice must set forth with specificity the Dry Dock affected and the nature and location of the defect), and upon inspection thereafter by Contractor at which time Contractor confirms that the warranted defect set out in the notice in fact exists, then Contractor promptly must correct the nonconforming work by making repairs or replacements, without expense to Owner.

ECF No. 95-3, PageID # 2137.  Under this clause, if Marisco provides a detailed written notice of a warranty claim before the expiration of the warranty period described in section 4.3 (no later than 30 days after the final inspection), GLEC must promptly correct the deficiency at no cost to Marisco after confirming the existence of the defect through an inspection of the dry dock.

If Marisco establishes that GLEC breached its duty to promptly correct deficiencies for which it received written notice, it is not clear on the present record that Marisco is necessarily limited to recovering the lesser of what the repairs would have cost in Indonesia or the actual cost.  Whether the limitation in section 4.4 applies to the repair of a particular defect may depend on GLEC's own actions.  *See Earl M. Jorgensen*

14

*Co. v. Mark Const., Inc.*, 56 Haw. 466, 477, 540 P.2d 978, 986 (1975) ("A limitation of remedies clause fails . . . when the seller or other party required to provide the remedy, by its action or inaction, causes the remedy to fail."); *Kahili, Inc. v. Yamamoto*, 54 Haw. 267, 272, 506 P.2d 9, 12 (1973) ("The general rule is that where a person by his own act makes impossible the performance or the happening of a condition such nonperformance should not relieve him from his obligation under a contract."); *Ikeoka v. Kong*, 47 Haw. 220, 228, 386 P.2d 855, 860 (1963) ("If a promisor himself is the cause of the failure of performance of a condition upon which his own liability depends, he cannot take advantage of the failure" (quotation marks, alterations, and citation omitted)); *Kalinowski v. Yeh*, 9 Haw. App. 473, 478, 847 P.2d 673, 677 (1993) ("it is well-recognized that no person should profit by his or her own wrong. The principle is expressed in the rule that no person can defend against contractual liability on grounds of a condition precedent when he or she is responsible for that condition precedent not being complied with." (quotation marks, alterations, and citation omitted)).

Marisco sent multiple letters to GLEC in which Marisco asserted warranty claims. If GLEC responded by saying that it had no obligation to address those claims until after it had conducted the final inspection and then, as Marisco contends,

GLEC delayed the final inspection and thus the repair, it may be that GLEC possibly breached a duty to promptly correct deficiencies under its warranties.  If that is established, GLEC might not be entitled to the benefit of limiting its liability to the lesser of the cost of repairing the dry dock in Indonesia or in Hawaii.

This court, of course, is not determining on the present motion that GLEC did in fact breach a duty in that regard.  Nor is this court saying that Marisco properly resorted to repairing the alleged defects itself.  Indeed, if Marisco fixed defects before giving GLEC the opportunity to do so, GLEC may well be entitled to the limitation set forth in section 4.4. But this court has not been asked to make this kind of factual determination.

Section 4.4 required GLEC to promptly correct nonconforming work, but expressly contemplated that that might not be practical.  Using the disjunctive "or," section 4.4 provided:

> or, if it is not practical to have Contractor make the repairs or replacements, then Owner may have the repairs or replacements made by a third party, and, in that event, Contractor must reimburse Owner an amount equivalent to the lesser of (a) the amount Contractor would have expended at its own yard at Contractor's then-prevailing rates or (b) the amount actually expended by Owner; provided, however, that in no event is Contractor to be liable to Owner for any amount in excess of the cost of repairs or replacements as specified above.

16

ECF No. 95-3, PageID # 2137.  GLEC now focuses on the language in subsection (b), arguing that it is indisputable that it was not practical for GLEC to promptly correct any defect.  GLEC points to its lack of presence in Hawaii, to the absence of any GLEC license to make repairs in Hawaii, and to the cost of about $2 million to transport the dry dock back to Indonesia and of another $2 million to ship it to Hawaii again.  GLEC therefore contends that, under the Agreement, Marisco may fix defects and, assuming those defects are covered by GLEC's warranty, Marisco is limited to recovering from GLEC the lesser of what it would have cost GLEC to fix the defects in Indonesia or the actual amount expended to fix the defects in Hawaii.  The court is unpersuaded that it should accept this argument on the present record.

As noted earlier, "a court's principal objective is to ascertain and effectuate the intention of the parties as manifested by the contract in its entirety."  *Univ. of Haw. Prof'l Assembly on Behalf of Daeufer v. Univ. of Haw.*, 66 Haw. 214, 219, 659 P.2d 720, 724 (1983).  The Hawaii Supreme Court has therefore stated, "We have long expressed our disapproval of interpreting a contract such that any provision be rendered meaningless."  *Stanford Carr Dev. Corp. v. Unity House, Inc.*, 111 Haw. 286, 297, 141 P.3d 459, 470 (2006).  This statement is consistent with section 203(a) of the Restatement (Second) of Contracts, cited with approval in *Daeufer*, which provides, "an

interpretation which gives a reasonable, lawful, and effective meaning to all the terms [of a contract] is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect."  Comment b to section 203 explains, "Since an agreement is interpreted as a whole, it is assumed in the first instance that no part of it is superfluous."  Hawaii courts "decline to presume that the parties intended to insert a meaningless and ineffectual" clause into their agreement.  *See Kutkowski v. Princeville Prince Golf Course, LLC*, 129 Haw. 350, 360, 300 P.3d 1009, 1019 (2013).

        Other jurisdictions similarly avoid interpreting contracts in ways that render provisions in the contracts superfluous.  *See Munroe v. Continental Western Ins. Co.*, 735 F.3d 783, 787 (8th Cir. 2013) ("Courts must also endeavor to give each provision a reasonable meaning and to avoid an interpretation that renders some provisions useless or redundant." (quotation marks and citations omitted)); *Crown Fin. Corp. v. McDonald's Corp.*, 2014 WL 1789899, at *2 (D.N.J. May 6, 2014) ("The Court must interpret a contract so as to give reasonable meaning to each provision, and avoid interpretations that would render provisions meaningless."); *Wells Fargo Bank v. Trolley Indus., L.L.C.*, 2013 WL 4669822, at *8 (E.D. Mich. Aug. 30, 2013) ("This court is obligated to give every term of the contract meaning and Defendants' interpretation would render the

above quoted provision a nullity."); *Messner v. Swepi, LP*, 2013 WL 4417723, at *5 (M.D. Pa. Aug. 14, 2013) ("Under Pennsylvania law it is well settled that a court is required to construe the entire language of the contract and avoid a construction and interpretation that would render certain language to be surplusage or a nullity.").

GLEC's argument that it is not "practical" for GLEC to fix any deficiency under its warranties might render its obligation to correct deficiencies superfluous and meaningless. GLEC's argument appears to be that it could never be "practical" for it to make such repairs in Hawaii. Then again, GLEC's obligation to promptly repair the dry dock with respect to warranty claims might still have had meaning if Marisco had had an opportunity to make such claims when the dry dock was still in Indonesia. The situation grows even more complicated if one accepts GLEC's argument that the warranty provisions kicked in only after GLEC conducted the final inspection when the dry dock was in Hawaii.

In any event, while there is no question that Marisco had an opportunity to inspect the dry dock prior to delivery in Indonesia, GLEC knew that the dry dock was going to be transported from Indonesia to Hawaii, that Marisco would finish constructing the dry dock in Hawaii, and that Marisco would then provide written notice to GLEC of warranty claims under sections

19

4.1 and 4.2 of the Agreement.  GLEC also knew that it would thereafter have an opportunity to inspect the dry dock with respect to warranty claims.  The Agreement then requires GLEC to "promptly . . . correct the nonconforming work by making repairs or replacements, without expense to Owner."  Only when not "practical" does the Agreement allow Marisco to fix the dry dock and get reimbursed by GLEC.  At a minimum, there is a question of fact as to whether it was "practical" for GLEC to address all warranty claims.

In relevant part, the American Heritage Dictionary of the English Language defines "practical" as "Capable of or suitable to being used or put into effect." https://ahdictionary.com/word/search.html?q=practical (last visited June 16, 2020).  That GLEC cannot itself address warranty claims in Hawaii still leaves the possibility that GLEC could have arranged for a third party to do repairs in Hawaii.  There remains a question of fact as to whether the impracticality prerequisite for the limitation in section 4.4 has been triggered.  This factual question precludes summary judgment on the issue.

V.      CONCLUSION.

The court denies GLEC's motion for partial summary judgment, as GLEC fails to demonstrate as a matter of law that

GLEC's reimbursement liability is limited to the lesser of the costs of repairing warranty work in Indonesia or in Hawaii.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, June 25, 2020.



/s/ Susan Oki Mollway
Susan Oki Mollway
United States District Judge


Marisco, Ltd. v. GL Engineering & Constr. PTE, Ltd., Civ No. 18-00211 SOM/RT, ORDER DENYING GLEC'S MOTION FOR PARTIAL SUMMARY JUDGMENT WITH RESPECT TO SECTION 4.4 OF THE AGREEMENT